## LIPPMAN *v.* MARTIN.

1. EQUITY—PARTY AS WITNESS—CREDIBILITY.

   A trial judge at a hearing of an equity case may disbelieve a party litigant, even though there be no direct denial of his testimony.

2. QUIETING TITLE—DEEDS—SECURITY FOR ATTORNEY FEE.

   In suit to quiet title in plaintiff grantee attorney and wife under quitclaim deed, recorded shortly after oil was discovered in paying quantities on 140-acre farm, and given at time clients entered into contingent-fee employment contract with the attorney, which contract provided latter was to receive one-half of all money or property received in a contemplated lawsuit with bank claiming an interest in the farm, such deed *held,* void and never effective as a conveyance to the grantees, since it was given as security for the attorney's fees, the litigation was terminated by a cash settlement and an assignment of interest in an oil and gas lease by the attorney who then received his fee and decree entered therein confirmed title in the bank.

3. JUDGMENT—ASSIGNMENT OF INTEREST IN OIL AND GAS LEASE.

   Real estate dealer's claim of interest in farm under oil and gas lease *held,* without merit, where, incident to termination of previous litigation he had assigned his interest therein to defendant bank and decree confirmed title in the bank which later negotiated lease under which dealer is now claiming.

Appeal from Arenac; Shaffer (John C.), J. Submitted June 15, 1949. (Docket No. 56, Calendar No. 43,935.) Decided September 8, 1949.

Bill by Harry J. Lippman and wife against Joseph Martin, receiver of Sterling Bank of Sleeper and

<hr>

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses, § 862.

Chamberlain, and others for decree quieting title and for an accounting of oil royalties. Cross bill by defendant Thomas Olszynski against other parties for decree quieting title and for an accounting. Cross bill by receiver Martin to have deed to plaintiffs set aside. Decree dismissed bill and cross bill of defendant Olszynski and granted relief to receiver on cross bill. Plaintiffs and cross-plaintiff Olszynski appeal. Affirmed.

*Harry J. Lippman* (*Leslie D. Bloom,* of counsel), for plaintiffs.

*Yeo & Bilitzke,* for defendant receiver.

*Louis B. Ver Wiebe* (*Raymond A. Ballard,* of counsel), for defendant Olszynski.

*A. H. McMillan,* for defendant Hughes.

*Hogan & Kostoff,* for defendant Rayburn.

*Dennis J. O'Keefe,* for defendants Mutch and Denny.

Butzel, J. Tony Tudryck and Mary Tudryck, his wife, were for some years the owners of a 140-acre farm in Deep River township, Arenac county, Michigan. On March 1, 1934, they had deeded the property to the Sterling Bank of Sleeper and Chamberlain of Sterling, Michigan, which gave back to them a land contract for the repurchase of the property. The bank was represented by J. Otis Mutch, its cashier and agent. On August 24, 1935, they had given an oil and gas lease of the property to one Alvin Wilkinson, but oil was not discovered at that time and the lease was evidently later terminated. In 1938, the Tudrycks had attempted to sell their interest in the property through Thomas Olszynski, a real estate dealer, cross-plaintiff and cross-appellant herein.

There arose some question as to the title of the property and on June 22, 1938, Olszynski took them to the office of Harry J. Lippman, an attorney of many years experience, and in whose office the daughter of Olszynski was employed as a stenographer. The Tudrycks believed they were entitled to a reconveyance of the property, but they had no money with which to pay an attorney. Mr. Lippman testified that when asked about his fees for handling the case, he stated that he "would handle it on a contingent-fee basis." On the following day 4 instruments prepared by Lippman were signed by the Tudrycks. One, a contract of employment, also signed by Lippman and Olszynski, provided that in consideration of past and future services, Lippman was to receive 50 per cent. of all money or property recovered in the contemplated lawsuit with the bank. It also provided that any proceeds from the oil and gas lease on the land or any other thereafter executed by the Tudrycks should be divided one third to Lippman, one third to Olszynski, and one third to the Tudrycks. The agreement further stated that the Tudrycks were that day conveying a one-half interest in the land to Lippman, and under his direction the deed was to be made out to Harry J. Lippman and Marian Lippman, his wife, plaintiffs and appellants herein. There is no claim that Mrs. Lippman rendered any services to the Tudrycks, or had anything whatsoever to do with the transaction. She did not testify at the hearing of the instant suit. The other instruments signed by the Tudrycks consisted of a quitclaim deed of a one-half interest in the 140 acres to Lippman and wife, an assignment of a one-half interest in the land contract with the bank to Lippman and wife, and an assignment of a one-third interest each to Lippman and Olszynski in the oil and gas lease, as provided for in the contingent-fee contract. None of the instruments were recorded at the

time, but 6 years later, after oil was discovered on the property, the quitclaim deed of the one-half interest to Lippman and wife was recorded.

Lippman after the execution of the contingent-fee contract opened a correspondence with Mr. Mutch, the cashier and agent of the bank, seeking an amicable adjustment. He finally began a suit in equity and secured a temporary injunction, which he personally served with a summons and bill of complaint on Mr. Mutch. Lippman claims that when he served Mutch he showed him the employment contract, deed, et cetera, but Mutch stated he did not remember that he had ever seen the instruments. Olszynski testified that Lippman handed Mutch the agreement, that the entire interview lasted "around 10 to 15 minutes," that Mutch did not read it all through, that he glanced through it, looked at the last page, and handed it back to Lippman. In making application for the temporary injunction, Lippman did not disclose to the court that he and his wife had any interest in the property. In fact the bill of complaint negatives such claim, as Tudryck and wife, the sole plaintiffs, were described as the owners. A trial judge at the hearing may disbelieve a party litigant, even though there be no direct denial of his testimony.

A receiver was appointed for the said bank on October 14, 1938, and was permitted to intervene as a party in the case. When it was ascertained that the Tudrycks actually owed a very much larger sum to the bank, Lippman opened negotiations for a settlement with the attorney for the receiver, and finally, with the consent of the court, $300 was paid in full settlement. In the negotiations for settlement between Lippman and the attorneys for the receiver, the former wrote "if the receiver can acquire title to the property freed from all claims, for the sum of $500, that would be an exceptionally good bargain

for him," et cetera. The Tudrycks executed a quit-claim deed of all their interest to the receiver of the bank, and Lippman gave them $110 and kept $190 of the $300 received by him in satisfaction therefor. On January 18, 1940, at the time of the settlement, Lippman wrote Olszynski that the attorneys for the receiver demanded that they sign over their interest in the oil and gas lease. Lippman and Olszynski then jointly executed an assignment of the lease (evidently the Wilkinson lease) that was attached, and they included in the assignment the further statement that "we in no manner holding any other right, title or interest in the premises under the lease involved." On stipulation of the attorneys, duly approved by Lippman, a decree was entered in the equity suit establishing and confirming title to the 140 acres in the receiver of the bank. This effectively closed the entire transaction.

Mr. Lippman stated that shortly before May 9, 1944, when he recorded the Tudryck deed, he learned that oil had been discovered in paying quantities on the property. He claims that the deed was not recorded earlier because he had given it to his wife, who had placed it for safekeeping in a safety deposit vault. Shortly after recording the deed, he and his wife as tenants by the entirety, and Mrs. Lippman in her individual capacity, as plaintiffs, brought the present suit against Olszynski, Mutch, and others who respectively claimed either ownership or interest in the overriding lease and the subleases of the gas and oil rights in the property. A protracted hearing was held, as shown by the 3 volumes of the printed record before us. In addition, frequent reference was made in the record to the case of *Tudryck* v. *Mutch,* 320 Mich 87, with which the trial judge was familiar. The trial judge rendered an opinion in which, after reviewing the former case, brought by the Tudrycks in regard to the

land contract and its final disposition by a decree cutting off all their rights or claims, and the abandonment of the cross bill seeking a foreclosure, he said:

"That defendants had notice of plaintiffs' interest in the premises. This claim involves a consideration of the nature of the interest of plaintiffs. I am satisfied from an inspection of the attorney-client agreement and from all the testimony that the deed under which plaintiffs' claim was but part of an employment contract on a contingent basis, and was never intended to convey a present, existing interest in the real estate. That the deed was taken by Harry J. Lippman for, or as a protection for his attorney fee in event he succeeded in obtaining a decree favorable to his clients. Upon the hearing it developed that his clients owed the bank a sum far in excess of the then fair market value of the land, and consequently Lippman was forced to take his fee out of the $300 paid by the receiver, and out of which he took one-half as the agreement provided. Having failed in his efforts to get the lands for his clients, the deed to plaintiffs never became effective as a legal transfer of title. Mr. Lippman did too many things inconsistent with the theory that the deed was intended to convey a present interest. And such things run from his preparation of his clients' bill of complaint alleging all title in them, to his failure to inform this court of his interest at the time of his application for the preliminary injunction, or during the trial of the cause, or at the time of the decree when the court ordered his trust officer to pay $300, for an absolute title in fee, and down through his acceptance of half of the $300 as his fee.

"So I am forced to conclude that such instrument never was effective as a conveyance of title, or that Harry J. Lippman practiced fraud or deception on this court. In either event his actions have estopped him, and all claiming by, through or under him, from asserting title as against the receiver or those claim-

ing under him. But even though it were considered as a legal conveyance, I am satisfied that Harry J. Lippman never informed J. Otis Mutch of his, Lippman's interest in the land, and I so find as a fact that none of the defendants—meaning thereby the receiver and those claiming under him—had notice of plaintiffs' interest in the premises as claimed by plaintiffs. I so find after consideration of all of the testimony and in judging the credibility of the witnesses by the usual standards. The burden on plaintiffs has not been met.

"So far as Marian F. Lippman is concerned she is in no different position than any other person claiming under a deed withheld from record without notice thereof to a subsequent bona fide purchaser for value. I find the receiver and those claiming under him are bona fide purchasers for value without notice, and that the Lippman deed is void. CL 1929, § 13304.* "

The trial judge further stated that he had seldom seen a case so devoid of equity. He further denounced the entire case as presented by plaintiffs in no uncertain terms. A decree was entered for the defendants, and the plaintiffs and cross-plaintiff have appealed.

It would serve no useful purpose to further discuss the testimony or the credibility of the witnesses. We are in full accord with the opinion of the trial judge and the decree entered in accordance therewith. In the entire correspondence and the court proceedings leading to the decree in the first case, the Tudryck deed, on which the plaintiffs here rely, was never mentioned. Lippman claims that he had forgotten about it at the time. It appears to us that this simply confirms the conclusion that the deed was given only as security for the contingent-fee contract. The plaintiffs never individually or as tenants by the entirety had title to or were vested

---

* CL 1948, § 565.29 (Stat Ann § 26.547).—REPORTER.

with a present interest in the property. The deed was given only to secure the attorney fees, which were paid on the settlement of the first case.

The other questions in regard to laches, estoppel, lack of notice, et cetera, raised by the parties become moot, and though they may be of merit need not be discussed. We have only mentioned some of the important facts that have brought us to our conclusion. We do not deem it necessary to set forth additional facts that only confirm those we have stated and further support our conclusions. The appeal of the cross-appellant, Olszynski, which largely follows the claims of plaintiffs as appellants is without merit. He largely relies on the contingent fee contract in which the Tudrycks were the first parties, Olszynski the second party and Lippman the third party. The preamble contains the statement that:

"Whereas, the said first parties have engaged the second party to help and assist them in connection with said controversy;    *    *    *

"Now therefore, the said first parties hereto, in consideration of the services heretofore for them by the said second party hereto, Thomas Olszynski, already performed, as well as in consideration of the services to be for them by the said Thomas Olszynski hereafter rendered, as aforesaid,    *    *    * second party, in consideration of his services aforesaid, to receive a like one-third interest in all moneys from and after this day by the said first parties hereto received by, through or because of the said existing oil and gas lease on said premises aforesaid, or any other oil and gas lease hereafter upon the said farm premises by the first parties executed,    *    *    * and grant unto the said second party hereto a one-third interest in and to any moneys by them, the said first parties hereto, at any time hereafter received under said existing oil and gas lease on said farm lands aforesaid, or any oil and gas right or

rights in connection with said lands hereafter executed."

No further oil leases were made by the Tudrycks. The new oil lease was made by the receiver of the bank after title was vested in him by deed and decree. Olszynski's testimony and the pleadings filed in his behalf tend to disprove his claims. Olszynski must have known that when he assigned the oil and gas lease which expressly disclaimed any other right, title or interest in the premises under the lease involved, he was through.

Decree affirmed, with costs to appellees from appellants.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.